IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MERRIT QUARUM, MD,

        Plaintiff,

        v.

MITCHELL INTERNATIONAL, INC.,

        Defendant.

Case No. 3:18-cv-02159-SB

**FINDINGS AND RECOMMENDATION**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Dr. Merrit Quarum ("Dr. Quarum") brings this action against Defendant Mitchell International, Inc. ("Mitchell"), alleging claims for breach of contract, violation of the covenant of good faith and fair dealing, wrongful discharge, and unpaid wages. (ECF No. 1.)[1]

Pending before the Court is Mitchell's motion to dismiss Dr. Quarum's complaint based on the doctrine of *forum non conveniens*. (ECF No. 7.) Alternatively, Mitchell asks the Court to transfer this case to the District of Delaware under 28 U.S.C. § 1404(a), or abstain under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). (ECF No. 7.) For the

---

[1] Mitchell timely removed this case from Multnomah County Circuit Court under 28 U.S.C. § 1332. (ECF No. 1.)

PAGE 1 – FINDINGS AND RECOMMENDATION

following reasons, the Court recommends that the district judge grant Mitchell's motion to transfer this case to the District of Delaware.

## BACKGROUND

Dr. Quarum, an Oregon physician, founded QMedtrix Systems, Inc. ("QMedtrix") in 1996. (Compl. ¶ 4.) QMedtrix developed software and processes to streamline the review and approval process used by insurance companies to vet physicians' claims for reimbursement in workers compensation and automobile insurance actions. (Compl. ¶ 4.)

In 2016, Dr. Quarum and the other shareholders of QMedtrix sold the company to Mitchell through a Stock Purchase Agreement ("SPA"). (Compl. ¶ 5.) The Preamble to the SPA identifies the contracting parties:

> This Stock Purchase Agreement (this "**Agreement**"), . . . is entered into among the shareholders listed on **Appendix A** hereto (collectively, "**Sellers**"), Mitchell International, Inc., a Delaware corporation ("**Buyer**"), as representative of the Sellers, Merrit Quarum (the "**Sellers' Representative**"), and solely for the purposes of Section 5.01 and Section 5.02, Merrit Quarum in his individual capacity (the "**Managing Shareholder**").

(Declaration of Laura Salerno Owens, Dec. 20, 2018 ("Salerno Owens Decl."), Ex. 1 at 5.) (emphasis in original).[2]

At the same time, Dr. Quarum and Mitchell entered into two other contracts relevant here: an Earnout Agreement and an Employment Agreement. (Compl. ¶¶ 5-6.) Under these contracts, Mitchell agreed to pay Dr. Quarum in part through earnout payments, and to hire Dr. Quarum as a full-time employee. (Compl. ¶¶ 5-6.) The Employment Agreement prevented Mitchell from terminating Dr. Quarum's employment without cause before October 31, 2018,

---

[2] "Courts may consider facts outside the pleadings when ruling on motions to transfer brought under 28 U.S.C. § 1404." *Howards v. Fifth Third Bank*, No. CV 18-01963 DDP (PLAx), 2018 WL 7890667, at *1 n.1 (C.D. Cal. Dec. 7, 2018) (citing *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014)).

and required six months of severance pay if Mitchell terminated Dr. Quarum without cause after that date. (Compl. ¶ 6.)

The SPA and the Earnout Agreement contain the following forum-selection clause:

> Any legal suit, action or proceeding arising out of or based upon this Agreement, or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the state of Delaware in each case located in Wilmington County, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. . . . The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

(Salerno Owens Decl., Ex. 1 at 55, 104-105.) The Employment Agreement does not include a forum-selection clause. (Salerno Owens Decl., Ex. 1.)

On January 8, 2018, Mitchell terminated Dr. Quarum's employment. (Compl. ¶ 11.) In response, Dr. Quarum sued Mitchell in the Delaware Court of Chancery, alleging that Mitchell breached the SPA and the Earnout Agreement by failing to market and promote QMedtrix's products. (Salerno Owens Decl., Ex. 2 at 5-8, 10-14.) On January 10, 2019, the Delaware Court of Chancery dismissed Dr. Quarum's complaint for lack of subject matter jurisdiction, and gave Dr. Quarum sixty days to transfer the case to Delaware Superior Court. (Declaration of Thomas J. Payne, Jan. 10, 2019, Ex. 1 at 15.) The parties indicated at oral argument that the case is now pending in the Delaware Superior Court.

On November 16, 2018, Dr. Quarum filed this case in Multnomah Country Circuit Court, and Mitchell timely removed. (ECF No. 1.)

///

///

PAGE 3 – FINDINGS AND RECOMMENDATION

## ANALYSIS

I.  **LEGAL STANDARDS**

The Supreme Court has explained that forum-selection clauses "that point to a particular federal district" "may be enforced through a motion to transfer [venue] under" 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Tex.*, 571 U.S. 49, 62-63 (2013). By contrast, "the appropriate way to enforce a forum-selection clause pointing to a state *or* foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 60 (emphasis added). In any event, courts "evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum" because "both § 1404(a) and the *forum non conveniens* doctrine . . . entail the same balancing-of-interest standard[.]" *Id.* at 61.

Under 28 U.S.C. § 1404(a), a district court may transfer a civil case to any district in which the parties could have originally brought the case after considering "the convenience of parties and witnesses" and the "interest of justice." 28 U.S.C. § 1404(a). At the first step of the analysis, a district court must find that "the requested venue is one in which the case might have originally been brought[.]" *Summit Foods, Inc. v. Viking Packaging Techs., Inc.*, No. 3:18-cv-1470-SI, 2018 WL 4690364, at *4 (D. Or. Sept. 28, 2018). At the second step, courts must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62-63 (quoting 28 U.S.C. § 1404(a)).

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404 analysis[.]" *Atl. Marine*, 571 U.S. at 63. First, the plaintiff's choice of forum merits no weight. *Id.* Second, courts may "not consider arguments about the parties' private interests." *Id.* at 64. Although courts may "consider arguments about public-interest factors," "those factors

PAGE 4 – FINDINGS AND RECOMMENDATION

will rarely defeat a transfer motion." *Id.* As a result, courts must give a forum-selection clause "controlling weight in all but the most exceptional cases." *Id.* at 63 (citation and quotation marks omitted).

## II.   DISCUSSION

The parties do not dispute that the SPA's forum-selection clause is mandatory, and therefore the Court turns to whether Dr. Quarum's claims fall within the scope of the SPA's forum-selection clause.

### A.   Scope of the Forum-Selection Clause

"The scope of the claims governed by a forum-selection clause depends [on] the language used in the clause." *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) (citation omitted). The Ninth Circuit has explained that forum-selection clauses covering claims "arising out of" a particular agreement apply only to disputes "relating to the interpretation and performance of the contract itself." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). By contrast, forum-selection clauses "covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Id.* (citation omitted). "The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id.* (citations omitted).

Dr. Quarum acknowledges that he is subject to the SPA's forum-selection clause in his capacity as "Sellers' Representative" and as a shareholder of QMedtrix. (Pl.'s Opp'n at 4.) However, Dr. Quarum argues that he did not agree to the SPA's forum-selection clause in his "individual capacity" as "Managing Shareholder" of QMedtrix. Therefore, because all of Dr. Quarum's claims arise from his employment relationship with Mitchell in his "individual

PAGE 5 – FINDINGS AND RECOMMENDATION

capacity," Dr. Quarum argues that the SPA's forum-selection clause does not apply to his claims in this case. (Pl.'s Opp'n at 4-5.) The Court disagrees.

As an initial matter, Dr. Quarum does not offer, and the Court has not found, any authority to support his argument that a contract's forum-selection clause applies to employment claims only if the plaintiff signs the contract in his "individual capacity." On the contrary, courts have applied venue provisions in stock purchase agreements to employment law claims without first analyzing whether the plaintiff signed the contract in his "individual capacity." *See, e.g.*, *Deese-Laurent v. Real Liquidity, Inc.*, 305 F. Supp. 3d. 280, 284-285 (D. Mass. 2018) (transferring the plaintiff's employment claims based on a forum-selection clause in a purchase agreement); *Ashworth v. Team Indus. Servs., Inc.*, No. SACV 16-01055-CJC(DFMx), 2016 WL 9412450, at *5 (C.D. Cal. Sept. 2, 2016) (same).

Turning to the text of the SPA, the Court finds that its broad forum-selection clause applies to Dr. Quarum's employment claims. The SPA requires "[a]ny legal suit . . . arising out of or based upon this Agreement, or the transactions contemplated" by the SPA to be filed in Wilmington County, Delaware. (Salerno Owens Decl., Ex. 1 at 55.) Like the phrase "relating to," the phrase "transactions contemplated hereby" expands the class of claims subject to the clause beyond just the claims arising out of the SPA. *See Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 574 (W.D. Tex. 2014) (noting that forum-selection clauses that contain the phrase "transactions contemplated thereby" are "extremely broad") (citations omitted).

Dr. Quarum's claims fall within the SPA's forum-selection clause because the Employment Agreement, upon which Dr. Quarum bases his claims,[3] is a "transaction

---

[3] Dr. Quarum asserts a claim for breach of the Employment Agreement, violation of the covenant of good faith and fair dealing under the Employment Agreement, and wrongful

PAGE 6 – FINDINGS AND RECOMMENDATION

contemplated" by the SPA. Section 2.04 of the SPA recognizes that the Employment Agreement is one of the "Transactions to be Effected at the Closing." (Salerno Owens Decl., Ex. 1 at 19.) In addition, the Employment Agreement states that "it is an express term of the [SPA] that the Company [Mitchell] and the Executive [Dr. Quarum] enter into this Agreement at Closing." (Salerno Owens Decl., Ex. 1 at 113.) Furthermore, Dr. Quarum acknowledges that he entered into the Employment Agreement with Mitchell "[a]s part of the transaction," i.e., the SPA. (Pl.'s Opp'n at 2; *see also* Compl. ¶ 5 (alleging that Mitchell hired Dr. Quarum "[a]s part of its acquisition of QMedtrix")). Given the interrelated nature of the SPA and the Employment Agreement, the Court finds that the SPA's forum-selection clause applies to Dr. Quarum's employment claims. *See LaBarge Coating, LLC v. LaBarge C&R LLC*, No. H-18-3961, 2018 WL 7290898, at *4 (S.D. Tex. Dec. 17, 2018) (finding that a lease agreement constitutes a "transaction contemplated" by a purchase agreement where the purchase agreement "makes execution of the [] lease an express condition to closing"); *Setzer v. Natixis Real Estate Capital, Inc.*, 537 F. Supp. 2d 876, 879 (E.D. Ky. 2008) (concluding that all of the duties the parties were obligated to perform before closing "comprised the 'transaction contemplated' by" the agreement's forum-selection clause).

    **B.**    **Enforcing the Forum Selection Clause**

The Court must next address how properly to enforce the SPA's forum-selection clause.[4] As discussed, the Supreme Court has made clear that courts should enforce a forum-selection clause pointing to a federal forum through transfer under § 1404, and enforce a forum-selection

---

discharge and lost wages based on Mitchell's termination of the Employment Agreement. (Compl. ¶¶ 17-21, 30, 40-41.)

    [4] Dr. Quarum does not dispute that the SPA's forum-selection clause is enforceable, and does not identify any extraordinary circumstance preventing the Court from enforcing the SPA's forum-selection clause.

clause pointing to a state or foreign forum through dismissal under *forum non conveniens*. *Atl. Marine*, 571 U.S. at 60. "It remains unsettled, however, whether transfer is required or preferable to dismissal when the forum selection clause at issue—like the one here—allows suit in *both* a federal and a state court." *OKCDT Enter., LLC v. CR Crawford Constr., LLC*, No. CIV-18-1134-G, 2019 WL 1320063, at *2 (W.D. Okla. Mar. 22, 2019) (emphasis in original).

Mitchell argues that dismissal under *forum non conveniens*, not transfer under § 1404, is the proper remedy here because the SPA's forum-selection clause allows suits to be brought in both the state and federal courts of Delaware. (Def.'s Reply at 8.) Dr. Quarum responds that transfer, not dismissal, is the appropriate remedy because the forum-selection clause designates a federal forum. (Pl.'s Opp'n at 5-7.)

Mitchell is correct that *Atlantic Marine* does not bar *forum non conveniens* dismissal when the forum-selection clause identifies multiple federal and state courts as proper fora. *See Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 704 (11th Cir. 2018). In *Hisey*, the Eleventh Circuit affirmed the district court's decision to enforce a forum-selection clause by dismissing the plaintiff's complaint under *forum non conveniens* where the forum-selection clause pointed to both federal and state fora. However, it did so because "[n]one of the parties filed a motion to transfer," and because the forum-selection clause did not limit venue to a particular federal district, "but rather to all three federal districts in Pennsylvania and their many divisions." *Id.*

Unlike in *Hisey*, the SPA's forum-selection clause points to only one federal district: the District of Delaware. Consistent with *Atlantic Marine* and § 1404(a), the Court finds that transfer to the District of Delaware is the appropriate remedy here. *See OKCDT Enter.*, 2019 WL 1320063, at *3 (choosing to enforce a forum-selection clause pointing to both federal and state forums through "the mechanism approved in *Atlantic Marine*: a § 1404(a) transfer of venue");

PAGE 8 – FINDINGS AND RECOMMENDATION

*see also Atl. Marine*, 571 U.S. at 59 ("Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a *particular* federal district.") (emphasis added); *cf. J and J Acquisition Partners, Inc. v. Alvernaz Partners, LLC*, No. 17-cv-07011 SJO (PLAx), 2018 WL 4959026, at *3 (C.D. Cal. Feb. 28, 2018) (noting that under 28 U.S.C. § 1406(a), courts have the discretion to choose between transfer or dismissal "for improper venue, but generally it is preferred to transfer the case rather than dismissing it altogether") (quoting *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001)).

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT Mitchell's motion to transfer this case to the District of Delaware.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 12th day of April, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge